

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMN:AHT
F.#2008R01634

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 16, 2012

By ECF and Hand Delivery

The Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Bartolomeo Vernace, et al.
            Criminal Docket No. 11-005 (S-1) (SLT)

Dear Judge Townes:

      The government respectfully submits this letter in response to defendant Anthony Vaglica's motion for severance (Docket Entry No. 163-2 (hereafter ("Vaglica Mem.")) and defendant Michael Dolphin's motion to join in certain motions of his co-defendants (Docket Entry No. 164). For the reasons set forth below, the motions should be denied.

I.    Vaglica

      Vaglica's motion for severance should be denied for many of the same reasons set forth in the government's response to the previously filed severance motions of co-defendants Dolphin, Vito Cortesiano and Robert Wehnert, which is included in the government's principal memorandum in response to the defendants' pre-trial motions. (See Docket Entry No. 156 (hereafter "Gov't Mem.") at 70-80 (Cortesiano), 97-99 (Dolphin) and 105 (Wehnert)).

      1.    Legal Standard

      The legal standard applicable to motions for severance is set forth in Section II.B.1 of the government's response to Cortesiano's motion for severance. (Gov't Mem. at 70-74).

2

2. <u>Analysis</u>

Vaglica's motion for severance is similar to that of his co-defendants inasmuch as it is primarily based on a fear of spillover prejudice from evidence of Vernace's involvement in a double murder and heroin trafficking in 1981, which the government will prove as part of the racketeering conspiracy in which all five defendants are jointly charged. Like that of his co-defendants, Vaglica's motion is meritless.

Vaglica is charged as a Gambino crime family associate in Count One's racketeering conspiracy. While the conspiracy is alleged to have begun in 1978 and continued through 2011, the predicate acts in which Vaglica is named begin in 1990 and continue through the early 2000s. Specifically, Vaglica is charged with extortionate extension and collection of credit conspiracy (Racketeering Act Six), illegal gambling (Racketeering Act Seven) and extortionate extension of credit conspiracy (Racketeering Act Eight). Two of the three predicate acts are crimes of violence, and all three acts relate to Vaglica's role as one of Vernace's key associates involved in operating Vernace'e core money-making activities during this period: loansharking and illegal gambling.

As noted in the government's prior filing, the preference for joint trials in the federal system is particularly strong where the defendants – as Vaglica and Vernace are here – are charged with participating in a common plan or scheme such as a racketeering conspiracy. <u>See</u> <u>United States v. Salameh</u>, 152 F.3d 88, 115 (2d Cir. 1998); <u>United States v. Cardascia</u>, 951 F.2d 474, 482 (2d Cir. 1991). Evidence of the murders and other predicate acts in which Vernace is named alone are also admissible to prove the racketeering conspiracy charge against Vaglica, including the two predicate crimes of violence with which he is charged. It is well established that evidence of racketeering crimes committed by a co-defendant is admissible against the defendant to prove the existence, continuity and activity of the racketeering enterprise. <u>See</u> <u>United States v. Diaz</u>, 176 F.3d 52, 103 (2d Cir. 1999); <u>United States v. Galasso</u>, 118 F. Supp. 2d 322, 325-26 (E.D.N.Y. 2000).

Vaglica argues that if evidence of the murders is admissible to establish the racketeering enterprise, so would be "every act by the Gambino family and its alleged members over the past 50 years." (Vaglica Mem. at 2). The argument is a red herring: the evidence of the earlier racketeering acts committed by Vernace, in whose crew Vaglica has spent the last two decades and with whom Vaglica is charged in the same long-running

3

racketeering conspiracy, is clearly relevant.  Moreover, the suggestion that Vernace's earlier acts have no relevance to the threat of violence that pervaded the later illegal activities of his crew is belied by the record.  As the government noted at last week's court conference in response to a similar argument from Dolphin, the 1981 murders had continuing relevance to the activities of Vernace's crew nearly 20 years after the event.[1]

As for Vaglica's fear of "spillover prejudice," the risk is minimal.  Vernace's involvement in the double murder and heroin trafficking occurred nearly a decade before the predicate acts in which Vaglica is named.  While Vaglica's crimes of violence are less serious than Vernace's, this fact does not require severance.  See United States v. Hernandez, 85 F.3d 1023, 1029-30 (2d Cir. 1996) (the mere introduction against some defendants of evidence of violence and other crimes not committed by the other defendants is not sufficiently prejudicial to warrant severance); United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir. 1990) ("[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.") (internal quotations omitted).  Vaglica has thus not carried his "extremely difficult burden" to justify severance, United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989) (citation omitted), which is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt," Zafiro v. United States, 506 U.S. 534, 539 (1993).

---

[1] In a consensual recording from 1999 previously provided to the Court in connection with Vernace's motion for pre-trial release, a discussion of the state murder charges then pending against Vernace gave rise to a chilling discussion of the circumstances under which a debtor might be killed.  One of Vernace's associates involved in loansharking told the debtor: "Does it happen?  Yeah.  It happens every day. . . .  Different circumstances allow that to happen.  This is not one of those circumstances.  [UI]  If they found you were setting them up, more than likely, yeah. . . .  You're not doing that."  The clear implication is that if Vernace and his associates knew that the debtor was cooperating with the government, as he indeed was, they would have killed him.  While that particular recorded related to a debt owed to Dolphin and Vernace, other recordings made by the same cooperating witness make clear that Vaglica was another one if Vernace's loansharks around this time.

4

In the end, as the government noted previously, to retain the considerable benefits of a joint trial but cure any minimal risk of prejudice, the Court may give a similar limiting instruction to that given by the district court in Zafiro. See Zafiro, 506 U.S. at 540-41. Although Vaglica claims that "there is no proof" that such a limiting instruction would be effective (Vaglica Mem. at 2), juries are presumed to follow the instructions they are given, see Salameh, 152 F.3d at 116, and Vaglica offers no reason why an instruction from the Court in this case would not be effective. See also United States v. Bin Laden, 109 F. Supp. 2d 211, 219 (S.D.N.Y. 2000) ("Federal courts, quite routinely, have found juries able to follow and abide by appropriate cautionary instructions.").[2]

II. Dolphin

By letter dated March 11, 2012, Dolphin moves to join Vernace's motion for various forms of additional or early discovery and Wehnert's motion to dismiss the indictment due to purported irregularities with respect to the grand jury. The government relies on its prior response in opposing these motions, which are equally meritless as applied to Dolphin. (See Gov't Mem. at 53-65 (response to Vernace's motion) and 99-105 (response to Wehnert's motion)).

---

[2] Vaglica also contends that severance is appropriate because the murders are not related to the racketeering conspiracy with which he is charged. (Vaglica Mem. at 1). Vernace made the same argument in his motion, and the government relies on its response here. (See Gov't Mem. at 22-29).

5

III. <u>Conclusion</u>

       For the reasons set forth above and in its principal memorandum in response to the defendants' pre-trial motions, the government respectfully submits that the defendants' motions should be denied.

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney

                         By:     /s/
                                      Evan M. Norris
                                      Stephen E. Frank
                                      Amir H. Toossi
                                      Assistant U.S. Attorneys
                                      (718) 254-6376/6143/6176

cc:   Clerk of the Court (SLT) (by ECF)
      Counsel of Record (by ECF)