UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,

        **MEMORANDUM & ORDER**

   -against-

        11-CV-05 (S-1) (SLT)

BARTOLOMEO VERNACE, et al.,

         Defendants.
------------------------------------------------------------------x

**TOWNES, United States District Judge:**

     The government moves to empanel an anonymous and partially sequestered jury to try this case. Specifically, it requests that "the identities of all prospective jurors, including their names, addresses, and places of employment, not be revealed to either the parties or their attorneys" and that "from the time each juror is empaneled until the conclusion of the trial, the jurors be escorted by representatives of the United States Marshals Service between the courthouse and a central undisclosed location each day and at all times during recesses. (Docket No. 215 ("Gov't Mem.") at 1). Defendants Bartolomeo Vernace ("Vernace") and Michael Dolphin ("Dolphin"), who joins in Vernace's opposition to the motion, argue that the government has failed to proffer sufficient evidence to warrant empaneling an anonymous jury and that less prejudicial alternative procedures are available if the Court determines that protection of the jury is necessary. For the reasons set forth below, the government's motion is granted.

**I.    BACKGROUND**

    **A.    The Enterprise**

     The first superseding Indictment (the "Indictment") charges that the Gambino organized crime family of La Cosa Nostra (the "Gambino Family") is an "enterprise" within the meaning of 18 U.S.C. § 1961(4). The Gambino Family allegedly operates through groups of "crews,"

each with their own hierarchical structure.  The crews are headed by captains; there is also a separate hierarchical structure above the captains – a "boss," "underboss," and "consigliere." These three members of the Gambino Family are allegedly "responsible for setting policy, resolving disputes between members and associates of the Gambino [F]amily and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Gambino [F]amily, including murder."  Together, the boss, underboss, and consigliere were the family's "administration."

According to the Indictment, "[t]he principal purpose of the Gambino [F]amily was to generate money for its members and associates," which it allegedly achieved "through various criminal activities, including drug trafficking, robbery, extortion, illegal gambling, and loansharking."  Moreover, Gambino Family members and associates allegedly "furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder."

The indictment also alleges that Gambino Family members and associates used the family's resources "to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the [F]amily."  To this end, members and associates were directed to commit acts of violence, including murder and assault.  In addition, Gambino Family members and associates allegedly "engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities."  This included a commitment to murdering persons, including other members and associates of organized crime families, thought to be potential witnesses against Gambino Family members and associates.

B.     **Charged Conduct**

Defendants Vernace; Vito Cortesiano ("Cortesiano"); Dolphin; and Anthony Vaglica ("Vaglica") are charged with engaging in a racketeering conspiracy from January 1978 through January 2011. According to the Indictment Vernace was, at various times relevant to the Indictment, a Captain, a solider, and an associate with the Gambino Family. Cortesiano, Dolphin, and Vaglica were associates in the Gambino Family.

As part of the racketeering conspiracy, Vernace is charged with conspiring to distribute and distributing heroin, conspiring to murder and murdering John D'Agnese, and conspiring to murder and murdering Richard Godkin. Vernace, along with Cortesiano and Dolphin, is also charged with illegal gambling using joker poker-type gambling machines. Vernace, Cortesiano, and Vaglica are charged with illegal gambling involving a seasonal baccarat game. Vernace, along with Vaglica, is also charged with conspiring to make extortionate extensions of credit to individuals who were participants in the seasonal baccarat games. Additionally, Vernace and Dolphin are charged with making, collecting, and attempting to collect an extortionate extension of credit from John Doe. Finally, Dolphin and Vaglica are individually charged with conspiring to make, collect, and attempt to collect extortionate extensions of credit.

## II.   DISCUSSION

### A.   Legal Standard

"On resolving motions for anonymous and partially sequestered juries, courts must balance 'the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.'" United States v. Kahn, 591 F. Supp. 2d 166, 168 (E.D.N.Y. 2008) (quoting United States v. Quinones,

511 F.3d 289, 295 (2d Cir. 2007)).  The law is clear in this Circuit, however, that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights."  United States v. Thai, 29 F.3d 785, 800-01 (2d Cir. 1994) (quoting United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991)).

The legal principals governing selection of an anonymous jury are well settled.  It is generally appropriate to order selection of an anonymous jury where (1) there is strong reason to believe that the jury needs protection; and (2) reasonable precautions are taken to minimize the effects of such a decision on the defendants and to ensure that their fundamental rights are protected.  Thai, 29 F.3d at 800; Vario, 943 F.2d at 239; United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).  Within these parameters, however, "the decision whether or not to empanel an anonymous jury is left to the district court's discretion."  United States v. Paccione, 949 F.2d 1182, 1192 (2d Cir. 1991); see also United States v. Persico, No. CR–92–00351 (CPS), 1994 WL 150837, at *1 (E.D.N.Y. Apr. 20, 1994).

Courts in this Circuit typically consider the following five factors when determining whether the jury needs the protection of anonymity:  "(1) the seriousness of the charges; (2) the dangerousness of the defendant[s]; (3) the defendant[s'] ability to interfere with the judicial process by [themselves] or through [their] associates; (4) previous attempts to interfere with the judicial process by the defendant[s] or [their] associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair."  United States v. Cacace, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004); see Thai, 29 F.3d at 801; United States v. Persico, 621 F. Supp. 842, 878 (S.D.N.Y. 1985).  In making this evaluation, the Court can rely on the government's proffer of

facts showing that the jury needs protection.  See United States v. Wong, 40 F. 3d 1347, 1376-77 (2d Cir. 1994).

### B.   The Factor Analysis

With respect to the first of the five factors set forth above, the superseding indictment alleges that the defendants who will be tried by this jury are members or associates of the Gambino Family and charges the defendants with crimes of violence underlying a racketeering conspiracy.  The predicate acts of the racketeering charge include murder conspiracy, drug conspiracy, illegal gambling, and extortion.  Vernace, who opposes the instant motion, is charged with the majority of acts in furtherance of racketeering, has been a "made" member of the Gambino Family since the 1990s and has served as a captain among other high-ranking roles.  As the government notes, Vernace is charged with having participated in two murders and faces the possibility of a life sentence.  Dolphin, who has joined Vernace in opposing the motion and is a lower-ranked associate, is named in the extortion and gambling acts.  Accordingly, the seriousness of the charges is a factor in this case that weighs in favor of an anonymous jury.

With respect to the second factor, the Court finds sufficient evidence that Vernace, in particular, is dangerous.  Indeed, the Court has previously determined that Vernace, as a leader, "has at his beck and call dangerous criminals to do his bidding."  (Docket No. 54 at 7).  See Khan, 591 F. Supp. 2d at 170-71 ("[I]nvolvement with and leadership of a criminal organization indicates [his] propensity for violence.").

With respect to the third and fourth factors, the government provides examples of two crucial eyewitnesses who recanted their testimony prior to the state trial in which Vernace was a defendant on murder charges.  (Gov't Mem. at 13-14).  In reversing the speedy-trial-based dismissal of that state court indictment, the appellate division held that the "prosecutor's original

5

determination not to proceed against the defendant because of the fear and reluctance to cooperate exhibited by the witnesses to these ruthless and cold-blooded murders, was clearly made in good faith." People v. Vernace, 274 A.D.2d 595, 597 (2nd Dep't 2000), aff'd 96 N.Y.2d 886 (2001).

Moreover, courts in this district have taken judicial notice of the Gambino crime family's overall history of obstruction of justice. See, e.g., United States v. Gammarano, No. CR-06-0072 (CPS), 2007 WL 2077735, at *5 (E.D.N.Y. July 18, 2007) (crediting "well-publicized previous attempts by members of the Gambino crime family to undermine the judicial process by intimidating witnesses and identifying jurors to influence or intimidate"); United States v. Locascio, 357 F. Supp. 2d 558, 564 (E.D.N.Y. 2005) (Gambino Family members "have a documented history of seeking to tamper with juries and . . . could provide the support necessary to achieve that objective.").

The Second Circuit has made clear that "[t]he invocation of the words 'organized crime,' 'mob,' or 'Mafia,' unless there is something more, does not warrant an anonymous jury." Vario, 943 F.2d at 241. Indeed, while courts often are concerned that an organized crime family with a history of obstruction of justice will intercede on behalf of a member, "it is also necessary to evaluate whether, given the relative importance of the defendant in the hierarchy, such a concern is warranted in a particular case." Gammarano, 2007 WL 2077735, at *5. According to the government's proffer in this case, Vernace has achieved the rank of "captain" in the Gambino Family and a cooperating witness learned that in 2008 or 2009, Vernace was appointed to a ruling panel to run the family's affairs. Accordingly, there is significant concern that others within the organization would intervene on his behalf. See Gammarano, 2007 WL 2077735, at *5 (granting motion where defendant's current rank was unclear, but had been "as high as an

'acting captain'"); Locascio, 357 F. Supp. 2d at 562 (Defendant, soldier in Gambino Family, had "strong and influential ties" sufficient to concern court that Gambino Family may assist him in tampering with jury). Accordingly, the documented examples of prior witness recantation and fear, coupled with Vernace's rank in the Gambino Family hierarchy augur in favor of an anonymous jury.

Finally, with respect to the fifth factor, "[p]ublicity enhances the likelihood that jurors['] names will become public, exposing them to intimidation or harassment." Gammarano, 2007 WL 2077735, at *6 (citing Vario, 943 F.2d at 240). In this case, this trial is expected to draw a considerable amount of public and media attention. Several articles relating to this case have already appeared in the New York Times, the New York Daily News, and the New York Post. (See Gov't Mem. at 25-26 (citing articles)). In light of the "the public fascination with organized crime cases," United States v. Persico, No. 04 CR 911(SJ), 2006 WL 1794773, at *2 (E.D.N.Y. June 9, 2006), there is every reason to expect extensive media coverage of the trial that "might expose the jurors to extraordinary pressures that could impair their ability to be fair." See United States v. Cacace, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004).

For the reasons stated above, this Court finds strong reasons to believe that the jury needs protection. This Court further finds that the measures proposed by the prosecution are reasonable under the totality of the circumstances in this case. While the defendants will not learn the prospective jurors' names, exact addresses and employers' names and addresses, this will not compromise the defendants' ability to engage in meaningful voir dire. See United States v. Locascio, 357 F. Supp. at 564 (noting that "even in a regular jury selection, the jurors are not called upon to divulge their address or the name and address of their employer"). This Court will still engage in extensive voir dire regarding such matters as the prospective jurors'

7

"familiarity with the case, the defendants and the crime scenes, . . . [the prospective jurors'] neighborhoods, marital status, employment, spouse's and children's employment, education, organizational affiliations, ethnicity, military service," and whatever other matters counsel may propose.  See United States v. Wong, 40 F.3d 1347, 1377 (2d Cir. 1994).  In addition, this Court will take steps to minimize any prejudicial effects on defendants' ability to maintain the presumption of innocence by giving the jurors "a plausible and nonprejudicial reason for not disclosing their identities [and] . . . for taking other security measures."  See Thai, 29 F.3d at 801.[1]

Finally, because "the same reasons that warrant the use of an anonymous jury also warrant partial sequestration of the jury," United States v. Prado, No. 10-CR-74 (JFB), 2011 WL 3472509, at *11 (E.D.N.Y. Aug. 5, 2011), the Court will partially sequester the jury.  Specifically, the Court will direct the United States Marshals Service to escort empaneled jurors between the Courthouse and a central undisclosed location each day and at all times during recesses.  See, e.g., Paccione, 949 F.2d at 1191 (affirming district court's partial sequestration of jurors by "having the jurors transported at the end of each trial day to an undisclosed central location from which they could go home"); United States v. Antico, No. 08-CR-559, 2010 WL 2545877, at *5 (E.D.N.Y. June 11, 2010) (ordering that anonymous jury be picked up and dropped off by the United States Marshals at an undisclosed location before and after trial each day).

---

[1]   "Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive." United States v. Galestro, No. 06-CR-285 (ARR), 2008 WL 2783359, at *3, n.3 (E.D.N.Y. July 15, 2008) (citing Gammarano, 2007 WL 2077735, at *6 (E.D.N.Y. July 18, 2007); United States v. Urso, No. 03-CR-1382 (NGG), 2006 WL 1210886, at *1 (E.D.N.Y. May 2, 2006)).  If the parties wish to propose another plausible, nonprejudicial explanation, they may do so at any time prior to the start of trial.

### III.     CONCLUSION

For the reasons stated above, the government's motion to empanel an anonymous, fully escorted and partially sequestered jury for the trial of defendants (Docket No. 215) is GRANTED.  The government is reminded that it is to submit a proposed jury questionnaire on or before January 25, 2013.  The defendants are to submit any proposed additions or objections by February 4, 2013.  The Juror Return date to complete the questionnaire is February 26, 2013.

**SO ORDERED.**

                                                                              /S/
                                                            SANDRA L. TOWNES
                                                            United States District Judge

Dated: January 11, 2013
           Brooklyn, New York